## 24420. BATEMAN v. BATEMAN.

Argued December 12, 1967—Decided January 4, 1968—
Rehearing denied January 18, 1968.

*Grant, Spears & Duckworth, William G. Grant,* for appellant.
*Westmoreland, Hall & O'Brien, John L. Westmoreland, Sr.,
John L. Westmoreland, Jr., P. Joseph McGee,* for appellee.

Nichols, Justice. 1. The first enumeration of error complains of the following excerpt from the court's charge: "I am not going to take the time to read to you the pleadings in this case. You will have them out with you, and you may read them for yourselves and thoroughly understand the contentions of the parties. I instruct you however, these pleadings are not evidence; they merely frame the issues for your consideration and determination." The complaint is that such charge, and particularly the part "merely frame the issues for your consideration and determination" permitted the jury to decide which issues it should decide while in fact the court is required to direct the jury as to which issues are for its determination. The court properly instructed the jury as to the issues before it. The complaint made by the defendant as to harm caused by the above charge is that the jury awarded custody of the children when custody was a matter which addressed itself solely to the trial judge and not to the jury. The jury in its verdict, before setting forth its findings as to alimony found "1. Plaintiff is to retain

custody of the four Bateman girls." The question of custody of children being for the court and not for the jury, this part of the jury's verdict was error which may have been caused by the language of the charge complained of. However, such error was harmless for the finding of custody was at most surplusage. The verdict was otherwise valid and the surplusage could be written off. See *Central R. v. Freeman*, 75 Ga. 331, 339; *Patterson v. Fountain*, 188 Ga. 473 (4 SE2d 38), and citations. However, in the case sub judice, where the trial court did award custody of the children to the plaintiff it would be unnecessary to expressly write off that portion of the verdict awarding custody to the plaintiff as such an amendment to the verdict would not benefit the defendant. Harm as well as error must be shown to authorize a reversal by this court. As was held in *Brown v. City of Atlanta*, 66 Ga. 71, 76: "When a plaintiff in error brings a case here, he must show error which has hurt him. This court is not an expounder of theoretical law, but it administers practical law, and corrects only such errors as have practically wronged the complaining party." See also *Dill v. State*, 222 Ga. 793 (152 SE2d 741), and citations. No harmful error is shown by this enumeration of error.

2. The enumerations of error numbered 2 through 6 all complain of a part of the verdict concerning the education of the minor children of the marriage, to wit: "A trust fund of $60,000 —is to be set up by September 1, 1967, for the purpose of educating the four Bateman children. Payments to this fund may be made in 5 equal annual installments, beginning September 1, 1967. All of the trust fund must be paid in by Sept. 1, 1971. A suitable trustee for this fund shall be appointed by the court. Any residue in this trust fund after the last child reaches the age of 21, shall revert to the defendant or his estate."

It is contended in the second enumeration of error that such part of the verdict, in addition to a specific amount per month for the support of each child until age 21, is contrary to law.

While this court has never expressly passed upon the question here raised, yet in *Adams v. Adams*, 213 Ga. 875 (102 SE2d 566), it held that a similar verdict providing for a trust fund for the education of a minor son was authorized where his support was

separately provided for in the verdict. *Code* § 30-207 provides with reference to support for minor children that the jury shall provide for the amount, "and in what manner, how often, to whom and until when it shall be paid," and while a verdict providing for their education only (no support being provided for) would be contrary to law (*Flynn v. Flynn*, 149 Ga. 693 (2) (101 SE 806)), the jury in a divorce case is not prohibited from providing for the education of minor children of an unsuccessful marriage. See *Moody v. Moody*, 224 Ga. 13.

(a) It is contended in enumerations of error numbered 3 and 4 that the above quoted excerpt from the jury's verdict authorized the expenditure of the trust fund for the education of the defendant's children, except the youngest, after their twenty-first birthday. *Code* § 110-105 provides: "Verdicts shall have a reasonable intendment, and shall receive a reasonable construction, and shall not be avoided unless from necessity." While the verdict did not expressly provide "that the trustee shall furnish funds for the education of each child only during her minority," the part of the verdict dealing with support payments did provide that such monthly payments would cease for each daughter when she reached age 21 or married, whichever event occurred first. The only reasonable intendment as to the part of the verdict dealing with the educational fund is that it could only be used for the education of the children prior to the twenty-first birthday of each daughter, and this is how it was construed by the trial court in rendering the decree based upon such verdict. Accordingly, these enumerations of error are without merit.

(b) The fifth enumeration of error complains that the above quoted provision of the verdict deprives the defendant of his inherent right to determine the nature and extent of the education to be given his children, and the sixth enumeration of error contends that it deprives the person who has custody of such children of the same right.

In support of these enumerations of error the defendant relies on the decision of this court in *Bd. of Ed. of Cartersville v. Purse*, 101 Ga. 422 (28 SE 896, 41 LRA 593, 65 ASR 312), where the question of a father's right to determine the education which will be given his children was exhaustively discussed.

Such decision was not by a full bench of this court, but even assuming without deciding such decision is binding and applicable today it in no wise controls the present case. That case dealt with a situation where a father had custody of the children and had no reference to a case where a divorce had taken place and custody of the children given to the wife. Where the custody of the children is placed in the mother or third person by decree of a court of competent jurisdiction the right to custody, and the corresponding privileges such as the right to decide the educational advantages such children shall receive, is no longer in the father. While under such circumstances his right to custody is gone, his duty to provide support remains. As was held in *Brown v. Brown,* 132 Ga. 712, 715 (64 SE 1092, 131 ASR 229): "The father is primarily entitled to the custody of his children; but if his conduct has been such as not to entitle him to their custody and to cause their custody to be awarded to some other person in divorce proceedings, this award of custody to another, by reason of misconduct on the part of the father, of itself does not relieve him of his legal obligation to support his children."

The verdict and decree requiring the defendant to set up the trust fund for the education of his minor children deprived the defendant of no right to decide the educational advantages his children would receive. This was done when he lost their custody. Thus, the fifth enumeration of error shows no reversible error.

The sixth enumeration of error which complains that the establishment of the trust fund deprives the person who has custody of the children from deciding such question shows no error harmful to the defendant since, even assuming that such contention is true, it in no wise affects the defendant who no longer has custody of the children.

3. The seventh enumeration of error complains that the verdict as to alimony and child support is excessive. In addition to the trust fund dealt with above the jury awarded alimony and child support as follows: The defendant to furnish the plaintiff $50,000 for the purchase of a home, $700 per month for her support, $125 per month for each child until age 21 or

marriage whichever occurs first, and 25% of the defendant's equities in real estate, stock and bonds as well as household furniture except the defendant's personal effects and family heirlooms.

"The question of alimony cannot be determined by a mathematical formula, as the facts and circumstances in each case are different. The jury is allowed a wide latitude in determining the amount to be awarded." *Jeffrey v. Jeffrey,* 206 Ga. 41, 42 (55 SE2d 566).

In the present case where there was evidence that the defendant had a net worth in excess of five and one-half million dollars, gross income from the practice of his profession of $239,000 during the last calendar year for which tax returns were available as well as income from investments, where the parties had resided in a home valued at $85,000 before the separation, the children attended private schools with tuition costs of approximately $1,000 per year for each child and the oldest daughter attended a college where the tuition, etc., was in excess of $3,000 per year, it cannot be said that the award of alimony was excessive.

4. The sole remaining question to be dealt with complains of a charge which expressed the principle of law stated in *Wills v. Wills,* 215 Ga. 556 (4) (111 SE2d 355), and is obviously without merit.

*Judgment affirmed. All the Justices concur, except Duckworth, C. J., Almand, P. J., and Frankum, J., who dissent.*

DUCKWORTH, Chief Justice, dissenting. 1. We should understand the meaning of *Code* § 74-105 at the outset. It provides that until majority it is the duty of the father to provide for the maintenance, protection and education of his child. In *Bd. of Ed. of Cartersville v. Purse,* 101 Ga. 422 (28 SE 896) at page 433, it is recognized that the father has a duty to educate his child, but it is there pointed out that neither at common law nor by any Georgia statute is provision made to compel the father to do so. If *Code* § 74-105 imposes an enforceable duty to educate until the age of 21 why enact Ga. L. 1916, p. 101, to compel the father to send his children to school between the ages of 8 and 14; or Ga. L. 1945, p. 343 (*Code Ann.*

§ 32-2104) requiring him to send his children from 7 to 16 years of age to school? The plain simple reason is that the legislature knew *Code* § 74-105 was unenforceable. It should also be noted that despite the apparent unqualified command of *Code* § 74-105, this court consistently, as in *Thompson v. Ga. R. &c. Co.*, 163 Ga. 598, 604 (136 SE 895), holds, that when the child marries before reaching 21, the duty of the father to support it ceases. While *Code* § 74-105 says it is the duty of the father to protect his child, I would think no one would seriously say he could be sued if he failed to prevent another from assaulting and injuring the child, although in such cases he has the highest moral duty and lawful right to protect it. In *Hooten v. Hooten*, 168 Ga. 86 (147 SE 373), at page 89, this court in speaking of the duty under *Code* § 74-105 to educate, quoted Mr. Justice Cobb in the *Purse* case, supra, as follows: "While the common law recognized this as a duty of great importance, there was no remedy provided for the child in case this duty was not discharged by the parent. The child at the will of the parent could be allowed to grow up in ignorance and become a more than useless member of society; and for this great wrong brought by the neglect of his parents the common law provided no remedy." It was there held that *Code* § 74-105 came from the common law. A further quotation by Justice Cobb was: "The section cited declares that the father shall provide for the maintenance, protection, and education of his child, but relatively to the matter of education no provision is made for the punishment of a parent who fails to discharge this duty, or for the relief of the child who is a victim of such failure." Was this court wrong? Until today neither this court nor the legislature has so said.

This court in *Flynn v. Flynn*, 149 Ga. 693 (101 SE 806) reversed an award of $15 per month for education of the child upon the sole ground that no award of support was therein made. That decision did not rule either for or against the award of education because that question was not presented for decision. But it is pat authority that education is not embraced in the words "permanent support" found in *Code* § 30-207. Indeed it was held in *Barlow v. Barlow*, 161 Ga. 202

(129 SE 860), that *Code* § 74-105 has no application to proceedings for alimony. We agree with *Mell v. Mell,* 190 Ga. 508 (1), 509-512 (9 SE2d 756), where is was said that *Code* § 74-105 was the law placing a duty to support which *Code* § 30-207 is designed to enforce. But this court should note well the difference in the two sections, in that *Code* § 74-105 includes education as well as support, yet when it comes to providing means of enforcement in *Code* § 30-207, the court was empowered only to enforce the support duty and omits entirely the education duty.

This court has the duty to uphold the law but never to enact it. We should assume that the legislature with knowledge of the *Purse* case, supra, holding there was no means for enforcing the parent's duty to educate has never attempted to provide means for enforcement and has deliberately refused to supply the courts with such means because they considered it unwise to do so. This assumption is validated by the above Acts prescribing the years when the parent must send his child to school—the maximum age being fixed far short of majority. Further, we should note that if there be conflict between *Code* § 74-105 declaring the father's obligation, and the compulsory school attendance law (Ga. L. 1945, p. 343; *Code Ann.* § 32-2104) as to his duty to see that his children attend school between the ages of 7 and 16, the latest enactment of the legislature is controlling.

I am further confident that we are confined in this case to the powers conferred by *Code* § 30-207, for the divorce court was vested therein with power to award only "permanent support." When this was done as in this case, the court's power was exhausted, and the attempt to require a trust fund for education was wholly beyond the court's power and is void. *Adams v. Adams,* 213 Ga. 875 (102 SE2d 566), did not present the legality of the trust fund for education, nor did this court rule on its legality or hold that it was authorized by the verdict. The jury gave the husband a divorce, and the wife appealed from that verdict. Her appeal made no complaint about the trust fund for her son and certainly raised no question of its legality or the sufficiency of the evidence to support it. The

general grounds of her motion for a new trial raised only the question of the sufficiency of the evidence to authorize the verdict for divorce of her husband. Furthermore, since the trust fund was in her favor she could not attack it other than for insufficiency.

Here, the verdict claiming authority under *Code* § 30-207 directed this father to deposit in trust $60,000 to be expended by a court-appointed trustee to educate the children regardless of age or marriage. The decree limiting this to minority completely ignores the law saying marriage ends the father's duty to support and educate.

The majority opinion shows what I believe to be a total misconception of the father's right to be concerned about his child once custody is awarded to the mother. It overlooks the fact that such does not dissolve the parental relation between the child and its father. His consent would be necessary for its adoption. See *Glendenning v. McComas,* 188 Ga. 345 (3 SE2d 562); *McAlhany v. Allen,* 195 Ga. 150 (23 SE2d 676). On a change of circumstances affecting the child's welfare, the father may secure an award of custody. See Headnote 2 of the *McAlhany* case, supra. Should the mother die, the law automatically invests the father with the right of custody. *Baynes v. Cowart,* 209 Ga. 376 (72 SE2d 716); *Bridgman v. Elders,* 213 Ga. 257 (98 SE2d 547). In the light of these principles of law, together with the natural love of a father for his child—no matter who has custody of it—it can never be correctly said that the father has no right to be concerned as to the kind of education he obtains for his child. Suppose the child is converted to communism while he pays for its attendance at a communist school, and any one of the above contingencies occurs whereby he regains custody, how would he feel, knowing he was forced to buy the education that completely ruined his child as tested by what he would have chosen for it? This inhuman situation can exist only by judgment of a majority of this court. The legislature has wisely refused to thus provide by law a means of destroying families and arraying parent against child, and I regret to see this court usurp legislative powers to write a law that can do so. Perhaps when countless minors sue their fathers

throughout this State to compel them to pay the expenses of such children for attending college, thus creating open warfare between parent and child, the majority of this court will thereby see the danger and chaos this decision threatens.

2. Reversible error is also shown in the charge complained of. The complaint is that it was confusing. It told the jury to look to the pleadings for the issues and that they should decide the issues therein. The petition asked for (1) attorney fees, (2) custody of the children, (3) an educational fund for the children, and (4) a division of the husband's property. The jury had no lawful right to consider any of these under the law. Nevertheless they did consider every one of them pursuant to the charge. The charge elsewhere correctly instructed the jury to consider the husband's ability to pay and the wife's and children's need for support, and based upon that, fix alimony and support for the children. The jury followed this charge and gave the wife $700 and each child $125 per month for support, and gave the wife other benefits. Therefore, it can not be truthfully said the jury was not confused as is contended in the face of the above four specific instances where they decided matters mentioned only in the pleadings but not in the correct charge, all of which actions are illegal. The fact that the judge decided custody and attorney fees, which he alone could do, does not remotely refute the demonstrated fact that the jury was confused into illegal action by the charge. But even the judge could not render legal the illegal portion of the verdict awarding $60,000 for education of the children and dividing the husband's property by giving the wife one-fourth thereof.

Beyond any question juries are completely without lawful power in a divorce and alimony case to simply slash up and divide the husband's property per se. The ultimate of their authority in such a case is to consider only his ability and her needs for support in the manner to which she was accustomed. And they can award this amount in money or its equivalent in property. To do this they should fix the amount in dollars, then they may find a value of property and give it instead of money. But courts should not tolerate longer the actions of juries in arbitrarily dividing up a man's property under the pretense of giving

support in conformity with the proofs of ability to pay and needs of the wife.

There is not the slightest doubt but that the charge complained of did precisely what the criticism asserts—confused, and I am confident this confusion caused the illegal findings herein pointed out. If justice is our goal we can reach it only by a judgment of reversal.

I am authorized to state that Mr. Justice Frankum concurs in this dissent.

ALMAND, Presiding Justice, dissenting. I dissent only from the ruling that it was not error for the jury by its verdict and the court by its decree to require the appellant to set up a trust fund for the college education of his minor children.

I know of no law, common or statutory, that requires a father to provide a college education for his children, whether the children be in his or in the wife's custody. If there is a deficiency in the law in this regard, it should be supplied by the legislature and not by the judiciary.